## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

SHIRLA WOODS,

      Plaintiff,

      v.

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

Civ. No. 2:16-cv-01657-KM

OPINION

## KEVIN MCNULTY, U.S.D.J.:

Shirla Woods brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) to review a final decision of the Commissioner of Social Security ("Commissioner") denying Woods's claims for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "SSA") and for Supplemental Security Income ("SSI") under Title XVI of the SSA. *See* 42 U.S.C. §§ 401–403 and 1381–1385. For the reasons set forth below, the careful and well-reasoned decision of the Administrative Law Judge ("ALJ") is largely affirmed, but is REVERSED and REMANDED for further proceedings as to certain discrete issues, listed in the Conclusion to this opinion.

### I.    BACKGROUND

Woods applied for DIB and SSI benefits on August 23, 2012, alleging a November 10, 2011 onset of disability (R 529–38).[1] Her claim was denied initially on January 17, 2013 (R 452–63), and again on reconsideration on May 22, 2013 (R 473–75). Woods subsequently requested and received a hearing

---

[1]    Pages of the administrative record (ECF No. 7) are cited as "R _". Pages of the Plaintiff's Brief (ECF No. 12) are cited as "Pl Br _".

before an ALJ (*see* R 30–61, 476), at which she testified on June 17, 2014 (*see* R 36–51).

ALJ Kimberly L. Schiro issued a decision dated July 29, 2014, finding Woods "not disabled" (*see* R 15–25). On October 2, 2014, Woods filed a request for review of the ALJ's decision (*see* R 9–11), which the Appeals Council denied on January 27, 2016 (*see* R 1–5), thereby rendering the ALJ's July 29, 2014 decision the final decision of the Commissioner. Woods now appeals that decision.

A prior application is relevant. Woods filed for Title II DIB on August 13, 2009, alleging that she had been disabled since February 26, 2009. (*See* R 15) Another ALJ, Miachel L. Lissek, denied Woods's 2009 application in a decision dated November 9, 2011. *See Woods v. Colvin*, No. 12-CV-06088 DMC JBC, 2013 WL 5730539. (*See also* R 235–378 (Exhibits 1F–18F)) On appeal to the United States District Court for the District of New Jersey, Judge Cavanaugh affirmed ALJ Lissek's decision on October 21, 2013. *See Woods*, 2013 WL 5730539, at *1. Referring to this history, ALJ Schiro concluded in her July 29, 2014 decision that Woods likely had an even greater residual functional capacity than she had possessed in 2011. (R 15)

## II.  DISCUSSION

To qualify for Title II DIB benefits, a claimant must meet the insured status requirements of 42 U.S.C. § 423. To be eligible for Title XVI SSI benefits, a claimant must meet the income and resource limitations of 42 U.S.C. § 1382. To qualify under either statute, a claimant must show that she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted (or can be expected to last) for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see, e.g., Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 503 (3d Cir. 2009).

2

### A. Five-Step Process and this Court's Standard of Review

Under the authority of the Social Security Act, the Social Security Administration has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 CFR §§ 404.1520, 416.920. This Court's review necessarily incorporates a determination of whether the ALJ properly followed the five-step process prescribed by regulation. The steps may be briefly summarized as follows:

**Step 1:** Determine whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 CFR §§ 404.1520(b), 416.920(b). If not, move to step two.

**Step 2:** Determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, move to step three.

**Step 3:** Determine whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 CFR Pt. 404, Subpt. P, App. 1, Pt. A. If so, the claimant is automatically eligible to receive benefits (and the analysis ends); if not, move to step four. *Id.* §§ 404.1520(d), 416.920(d).

**Step 4:** Determine whether, despite any severe impairment, the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. *Id.* §§ 404.1520(e)–(f), 416.920(e)–(f). If not, move to step five.

**Step 5:** At this point, the burden shifts to the Social Security Administration to demonstrate that the claimant, considering her age, education, work experience, and RFC, is capable of performing jobs that exist in significant numbers in the national economy. 20 CFR §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91–92 (3d Cir. 2007). If so, benefits will be denied; if not, they will be awarded.

For the purpose of this appeal, the Court conducts a plenary review of the legal issues. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). The factual findings of the ALJ are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* When substantial evidence exists to support the ALJ's factual findings, this Court must abide by the ALJ's determinations. *See id.* (citing 42 U.S.C. § 405(g)).

This Court may, under 42 U.S.C. § 405(g), affirm, modify, or reverse the Commissioner's decision, or it may remand the matter to the Commissioner for a rehearing. *Podedwomy v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984); *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 865–66 (3d Cir. 2007) (non-precedential). Outright reversal with an award of benefits is appropriate only when a fully developed administrative record contains substantial evidence that the claimant is disabled and entitled to benefits. *Podedwomy*, 745 F.2d at 221–222; *Morales v. Apfel,* 225 F.3d 310, 320 (3d Cir. 2000).

Remand is proper if the record is incomplete, or if there is a lack of substantial evidence to support a definitive finding on one or more steps of the five step inquiry. *See Podedwomy*, 745 F.2d at 221–22. Remand is also proper if the ALJ's decision lacks adequate reasoning or support for its conclusions, or if it contains illogical or contradictory findings. *See Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119–20 (3d Cir. 2000); *Leech v. Barnhart*, 111 F. App'x 652, 658 (3d Cir. 2004) ("We will not accept the ALJ's conclusion that [the claimant] was not disabled during the relevant period, where his decision contains significant contradictions and is therefore unreliable.") (not precedential). It is also proper to remand where the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available

evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted).

### B. The ALJ's Decision

ALJ Schiro properly followed the five-step process. I summarize her conclusions here:

### Step 1

At step one, ALJ Schiro found that Woods met the insured requirements of the SSA through December 31, 2014, and had not engaged in substantial gainful activity from the alleged onset date of November 10, 2011 (R 17).

### Step 2

At step two, the ALJ found that Woods had the following severe impairments: insulin dependent diabetes mellitus, degenerative joint disease of the spine, and depression with anxiety (R 18).

At this step, the ALJ rejected Woods's claim that she suffers a severe impairment attributable to fibromyalgia. Substantial evidence in the record, which the ALJ thoroughly evaluated, supported this conclusion. Specifically, ALJ Schiro recognized that Woods reported to consultative examiner Rahel Eyassu, MD that she had been diagnosed with fibromyalgia. But the ALJ also observed that medical records from Woods's treating physicians did not show any such diagnosis or evidence of the tender points typically associated with fibromyalgia. (R 18; *see, e.g.*, R 555, 604–606, 617–23)[2] Woods was not

---

[2]    Judge Cavanaugh discussed the "conflicting evidence with respect to Plaintiff's fibromyalgia diagnosis" in his October 21, 2013 opinion:

> Dr. Rubbani, the consultative examiner, diagnosed Plaintiff with fibromyalgia. Dr. Fadairo Afolabi, a chiropractor at Robinson Wellness Center, found fibromyalgia as a "symptom," but not as a formal diagnosis. (Tr. 202–03).[2] After conducting a laboratory test in September 2009, Dr. Gandhi found an indication of fibromyalgia based on Plaintiff's elevated sedimentation rate but did not diagnose Plaintiff as suffering from fibromyalgia. (Tr. 20, 242, 326–27). Finally, Dr. David, a medical doctor, did not diagnose

receiving medication or any other treatment for fibromyalgia. (*Id.*) Consistently, the consultative examiner found no joint swelling, crepitus, or instability, and could not identify any particular trigger/tender points because, during a trigger point examination, Woods complained of pain everywhere. (*Id.*)[3]

The ALJ also acknowledged Woods's alleged fibroids and anemia, but again concluded that the treatment records did not establish that either caused a medically determinable severe impairment. (R 18, 555; *see, e.g.*, 604, 616–33) Substantial evidence supported this conclusion as well.

## Step 3

At step three, ALJ Schiro stated that Woods's impairment or combination of impairments neither met nor medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R 18). With respect to physical impairments, she found that Woods failed to meet the criteria for medical listing 1.02, Major dysfunction of joint(s);[4] for medical

---

Plaintiff with fibromyalgia or even treat her for this condition. (Tr. 198).

*Woods v. Colvin*, No. 12-CV-06088 DMC JBC, 2013 WL 5730539, at *3 (D.N.J. Oct. 21, 2013). Because, Judge Cavanaugh reasoned, the only diagnosis came from a consultative examiner and not one of Woods's own treating physicians, she had failed to carry her burden to show functional limitations and a diagnoses with respect to fibromyalgia. *Id.* at *10.

3    Social Security Ruling 12-2p explains that the Commissioner will find that a claimant has a medically determinable impairment of fibromyalgia if a licensed physician (1) diagnoses fibromyalgia and other record evidence does not contradict the diagnosis and (2) provides evidence of either: (A) the following three criteria: (1) widespread pain; (2) at least 11 positive tender points recorded on physical examination (which must be performed in a specific manner), both bilaterally and above and below the waste; and (3) evidence that other disorders that could cause the reported symptoms were excluded; or (B) the following three criteria: (1) history of widespread pain; (2) repeated manifestations of six or more fibromyalgia symptoms; and (3) evidence that other disorders that could cause the reported symptoms were excluded. *Soc. Sec. Ruling, Ssr 12-2p; Titles II & Xvi: Evaluation of Fibromyalgia*, SSR 12-2P (S.S.A. July 25, 2012).

4    1.02, Major dysfunction of a joint(s), requires:

[G]ross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint

listing 1.04, Disorders of the Spine;[5] and for medical listing 9.08, Diabetes mellitus.[6] ALJ Schiro specifically found that there was no evidence of

---

space narrowing, bony destruction, or ankylosis of the affected joint(s). With:

A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;

OR

B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

https://www.ssa.gov/disability/professionals/bluebook/1.00-Musculoskeletal-Adult.htm#1_02; 20 C.F.R. Pt. 404, Subpt. P, App. 1.

[5]    1.04 Disorders of the spine requires:

[C]ompromise of a nerve root (including the cauda equina) or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

OR

B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;

or

C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

https://www.ssa.gov/disability/professionals/bluebook/1.00-Musculoskeletal-Adult.htm#1_04; 20 C.F.R. Pt. 404, Subpt. P, App. 1.

[6]    Former listing 9.08 "evaluated diabetes mellitus by inquiring whether the claimant suffered from neuropathy, frequent episodes of diabetic ketoacidosis, or severe retinal inflammation." *Christiansen v. Colvin*, No. 5:14-CV-1314-AKK, 2015 WL 875427, at *3 (N.D. Ala. Mar. 2, 2015). However, as of June 7, 2011, listing 9.08 has been replaced by revised Listing 9.00, Endocrine disorders, which states that the SSA "evaluate[s] impairments that result from endocrine disorders under the listings for other body systems," and provides examples of other disorders that may result. https://www.ssa.gov/disability/professionals/bluebook/9.00-Endocrine-Adult.htm;

neuropathy, acidosis, retinopathy, or any end organ damage to support Listing 9.08. I find that substantial evidence supports these conclusions.

The ALJ also found that Woods's mental impairments, alone and in combination, did not meet or medically equal listings 12.04, Depressive, bipolar and related disorders, or 12.06, Anxiety and obsessive-compulsive disorders.[7]

---

20 C.F.R. Pt. 404, Subpt. P, App. 1. *See* Revised Medical Criteria for Evaluating Endocrine Disorders, 76 Fed.Reg. 19,692.

[7]      A claimant meets or medically equals listing 12.04, Depressive, bipolar and related disorders, when he or she either satisfies both the paragraph A and paragraph B criteria, or both the paragraph A and paragraph C criteria of that listing.

To satisfy the paragraph A criteria, a claimant must, in essence, medically document the persistence of depressive or bipolar disorder. To satisfy the Paragraph B, a claimant must demonstrate an extreme limitation in one, or a marked limitation in two, of the following areas of mental functioning: (1) Understand, remember, or apply information; (2) Interact with others; (3) Concentrate, persist, or maintain pace; and (4) Adapt or manage oneself. To satisfy the Paragraph C criteria, the claimant must demonstrate that his or her mental disorder is "serious and persistent," meaning the existence of the disorder has been medically documented for at least two years and there is evidence of both: (1) medical treatment, mental health therapy, psychosocial support, or a highly structured setting that diminishes the signs and symptoms of the disorder, and (2) a minimal capacity to adapt to changes in the environment or demands not already part of daily life.
https://www.ssa.gov/disability/professionals/bluebook/12.00-MentalDisorders-Adult.htm#12_04; 20 C.F.R. Pt. 404, Subpt. P, App. 1.

Until recently, and under the version of the medical listings ALJ Schiro considered, Paragraph B of listing 12.04 required the claimant to demonstrate that his or her disorder caused at least two of the following: (1) "Marked restriction of activities of daily living"; or (2) "Marked difficulties in maintaining social functioning"; or (3) "Marked difficulties in maintaining concentration, persistence, or pace"; or (4) "Repeated episodes of decompensation, each of extended duration . . . ." Paragraph C required:

> Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and" any of three symptoms: 1) repeated episodes of decompensation; 2) a residual disease process resulting in such marginal adjustment that even a minimal increase in mental demands or change in environment would cause the individual to decompensate; or 3) a history of one or more years' inability to function outside

ALJ Schiro acknowledged that Woods reported to the psychiatric consultative examiner, Dr. Tolchin, that she has received outpatient care for mental disorders since 2012. But the ALJ found no evidence regarding mental health care in the record. She noted that Woods also testified at her hearing that she is not receiving mental health treatment or being prescribed psychotropic medication. (R 18) ALJ Schiro also considered record evidence and Woods's own testimony indicating that Woods handles her own personal care, drives and shops independently, pays bills and handles money, and gets along with others including authority figures. (R 19; *see* R 586–92) The only indication of Woods's mental health impairments in the record from the relevant time frame, ALJ Schiro reasoned, were Dr. Tolchin's report that Woods has mildly impaired attention and concentration, and trouble with handling stress. (R 19) Dr. Tolchin also diagnosed Woods with major depression secondary to chronic pain. (*Id.*)

Whether using the former or newer 12.04 and 12.06 listing criteria, I find that substantial evidence supports ALJ Schiro's conclusion that the record evidence satisfies neither the "paragraph B" nor the "paragraph C" criteria. (*See* R 18–19)

### Step 4 – RFC and Ability to Perform Past Work

Next, ALJ Schiro defined Woods's RFC as follows:

---

of a highly supportive living arrangement, with an indication
of continued need for such an arrangement.

*See Kovach v. Comm'r of Soc. Sec.*, No. CV 15-6999 (KM), 2017 WL 1095037, at *4 (D.N.J. Mar. 22, 2017); *Trzeciak v. Colvin*, No. CV 15-6333 (KM), 2016 WL 4769731, at *7 (D.N.J. Sept. 12, 2016). (R 18–19)

A claimant meets or medically equals listing 12.06, Anxiety and obsessive-compulsive disorders, when he or she either satisfies both the paragraph A and paragraph B criteria, or both the paragraph A and paragraph C criteria of that listing.

To satisfy the paragraph A criteria, a claimant must meet medical documentation requirements for an anxiety disorder, panic disorder or agoraphobia, or obsessive-compulsive disorder. The paragraph B and C criteria are the same for listing 12.06 as for listing 12.04, *see supra* n.6. https://www.ssa.gov/disability/professionals/bluebook/12.00-MentalDisorders-Adult.htm#12_04; 20 C.F.R. Pt. 404, Subpt. P, App. 1.

> [T]he claimant has the [RFC] to perform **sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)** except that she can perform simple, routine tasks at the sedentary exertional level. She cannot climb ladders/ropes/scaffolds or work around hazards (moving mechanical parts or at unprotected heights). She cannot crawl and can occasionally climb ramps and stairs, stoop, kneel and crouch. She is limited to low stress work, which I define as follows: there are only occasional changes in work routines: the work only involves simple decision-making: there is occasional contact with coworkers and supervisors: there is no public contact: the work cannot require working on teams or in collaboration with others. Finally, she requires a five-minute break for every hour of sitting.

(R 19–20).[8]

To arrive at this RFC, ALJ Schiro comprehensively evaluated the record evidence, following a two-step process in which she determined (1) whether the evidence supports the existence of medically determinable physical or mental impairments and whether the impairment could reasonably be expected to produce the pain and other symptoms Woods reports; and (2) the extent to which the "intensity, persistence, and limiting effects" of Woods's symptoms limit Woods's functioning, assigning credibility-based weight to statements concerning intensity, persistence, and limiting effect in the record. (R 20)[9]

---

[8]    The Social Security Administration defines "sedentary work" as involving:

> lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a), 416.967(a).

[9]    ALJ Schiro applied the guidance of SSR 96-7p, which was superseded by SSR 16-3p. The new guidance eliminates the term "credibility" from the agency's sub-regulatory policy and was issued after ALJ made her decision. *See Soc. Sec. Ruling 16-3p; Titles II & Xvi: Evaluation of Symptoms in Disability Claims*, SSR 16-3P (S.S.A. Mar. 16, 2016). Under the new guidance of SSR 16-3p, however, ALJs are still called on to

Turning to the record, ALJ Schiro considered that Woods reports chronic pain throughout her body but particularly in her back, hips, and shoulders. (R 21) The ALJ recited Woods's allegations that she wakes with pain in the morning, has difficulty sitting, concentrating, and falling asleep due to pain, uses a cane to walk, and depends in part on her mother—with whom Woods and her young daughter live—to cook and clean. (R 20–21) Woods also occasionally requires her mother's help in the shower, ALJ Schiro noted. The ALJ found it significant that Woods is, however, capable of driving to pick up her daughter from school, of handling her own personal care (albeit with some difficulty), of preparing simple foods and performing very light cleaning, and of going shopping with assistance. (R 20, 22) ALJ Schiro also noted that Woods avoids taking medication for fear of side effects and dependency. (*Id.*) She further observed that Woods's "only modality of relief is a heating [pad]," which Woods uses to fall asleep. (R 20, 22)

ALJ Schiro then listed several types of medical evidence that would support Woods's subjective reports but which are lacking in the record: evidence of significant musculoskeletal impairment; reports of positive straight leg or range of motion testing; evidence of neurological deficits; a fibromyalgia diagnosis, evidence of tender points, or other clinical indicia of fibromyalgia; evidence that Woods sought treatment from an orthopedist; evidence that Woods cannot ambulate without a cane or that a physician prescribed such an assistive device; and evidence of acidosis, neuropathy, retinitis, lower extremity

(1) determine whether the claimant has a medically determinable impediment that could reasonably be expected to produce the claimant's alleged symptoms and (2) evaluate the intensity and persistence of the claimant's symptoms, based on the record evidence as a whole. This is the same responsibility with which ALJs were charged under the agency's previous guidance. *See Cole v. Colvin*, No. 15-3883, 2016 WL 3997246, at *1 (7th Cir. July 26, 2016). ("[T]he change in wording is meant to clarify that administrative law judges aren't in the business of impeaching claimants' character; obviously administrative law judges will continue to assess the credibility of pain *assertions* by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence."); *Murnane v. Colvin*, No. CV 15-7704 (KM), 2017 WL 548942, at *6 (D.N.J. Feb. 10, 2017).

edema, neurological deficits, or abdominal abnormalities (i.e., evidence of complications due to diabetes mellitus). (R 21)

ALJ Schiro weighed the absence of this evidence against the presence of the following evidence: a diagnosis of degenerative joint disease of the cervical and lumbosacral aspects of the spine (although the record shows no associated positive clinical findings, the ALJ cautioned); annual treatment records from Woods's nephrologist, Dr. Gandhi, who manages Woods's diabetes mellitus and advised her to see an orthopedist;[10] and June 5, 2014, treatment records indicating lower back tenderness. (R 21)

ALJ Schiro also observed that consultative examiner Dr. Eyassu, who attempted to perform an orthopedic examination on Woods in December of 2012, had difficulty testing Woods's range of motion because Woods's "movements appeared exaggeratedly slow and severely antalgic" and "extremely limited due to very poor effort." (R 21 (quoting R 605)) Dr. Eyassu reported that Woods exhibited very poor effort in responding to trigger point and motor strength examinations. (*Id.*) Additionally, Dr. Eyassu had cervical and lumbrosacral x-rays performed on Woods. The lumbrosacral x-ray showed an intact spine with no fracture or bony lesion and the cervical x-ray showed minimal osteophyte formation at the C5-6 vertebrae level but an otherwise intact cervical spine. (R 21; *see* R 612)

ALJ Schiro next discussed Woods's mental health record, consisting of a report by consultative psychiatric examiner Dr. Tolchin. (*See* R 601–603) Dr. Tolchin reported that Woods had mildly impaired attention and concentration but showed no evidence of psychosis and displayed a logical and goal-directed thought process as well as adequate social functioning. (R 22–23; *see* R 602–603) ALJ Schiro also noted that, although Dr. Tolchin diagnosed Woods with

---

[10]     ALJ Schiro noted that Woods reported seeing Dr. Gandhi every three months, while the record suggests Woods sees Dr. Gandhi only once per year, primarily for prescription refills and to have disability paperwork completed. (R 21)

depression secondary to pain, the record contains no evidence that Woods receives mental health care or takes psychotropic medications. (R 22–23)[11]

Based on this record, ALJ Schiro assigned weight to the medical opinion evidence as follows. To Dr. Gandhi's opinion from August 2011 that Woods is unable to work, the ALJ assigned "little weight" "due to significant inconsistencies" in Dr. Gandhi's records. (R 22)[12] But, ALJ Schiro did afford weight to Dr. Gandhi's more recent treatment records—and his diagnosis of degenerative joint disorder in particular—in conjunction with evidence that Woods is overweight, to determine that Woods's RFC must incorporate stretching breaks and limitations on prolonged standing and walking. (*See* R 23)

ALJ Schiro also afforded some weight to the assessments of state agency medical consultants who limited Woods to a light RFC due to her diabetes mellitus. (R 23) She likewise gave some weight to Dr. Eyassu's assessment that Woods has limitations in bending, turning, twisting, heavy lifting, sustained pulling and pushing and prolonged walking, incorporating these limitations in to the RFC (*Id.*)

Next, ALJ Schiro credited the reports of state agency psychological consultants who considered Woods's affective disorder non-severe and only mildly limiting, and gave "partial weight" to Dr. Tolchin's report that Woods shows a global assessment of functioning ("GAF") score of 55—a score consistent with moderate limitations. (R 23)

In contrast, ALJ Schiro accorded "little weight" to portions of Dr. Tolchin's assessment in which he opined that Woods has trouble maintaining attention and concentration. ALJ Schiro explained that she saw no evidence

---

11    I note that Dr. Tolchin's October 2012 consultative examination report states that Woods "sees a therapist once a week since August 2012." (R 395) I agree, however, that there is no evidence in the record to substantiate that Woods receives therapy or any sort of psychiatric treatment.

12    Because Dr. Gandhi's August 2011 opinion pre-dated the relevant time period and had already been evaluated by ALJ Lissek, ALJ Schiro quoted the portion of ALJ Lissek's 2011 decision that discredited Dr. Gandhi's opinion. (R 22 (quoting R 437))

that Woods is "unable to concentrate, persist, and keep pace with simple, routine tasks," and viewed Dr. Tolchin's clinical findings as showing "only mild attention and concentration impairment." (R 23) Accordingly, the ALJ concluded that Dr. Tolchin was merely conjecturing when he reported that Woods demonstrates "psychiatric problems, which may significantly interfere with the claimant's ability to function on a daily basis." (*Id.*) In support of her conclusion, ALJ Schiro reiterated Woods's ability to independently perform normal daily activities and her lack of mental health treatment. (*Id.*)

ALJ Schiro concluded, in summary, that little had changed in Woods's medical records since ALJ Lissek denied her 2009 application for DIB. (R 20–21) In fact, ALJ Schiro supposed, Woods "likely retains a greater residual functional capacity" now than she did during the 2009–2011 application process. (R 21)

In light of Woods's RFC and based in part on the testimony of a vocational expert ("VE"), ALJ Schiro determined that Woods could not perform her past relevant work as a customer service representative, biller, waitress, or retail sales clerk. (R 24–25)

### Step 5

Because Woods suffers from limitations that impede her ability to perform the full range of sedentary work, ALJ Schiro proceeded to Step 5. The ALJ asked the VE to state whether there are jobs existing in the national economy that a hypothetical individual with Woods's age, education, work experience, and RFC would be capable of performing. (R 25) The VE testified that the hypothetical individual could hold the following representative occupations, all sedentary in nature and existing in significant numbers in the national economy: eyeglass polisher (DOT 713.684-038); preparer (DOT 700.687-062); and compact assembler (DOT 739.687). (R 25, 53–54) Accepting this testimony, ALJ Schiro found Woods "not disabled" under the SSA, §§ 216(i), 223(d), and 1614(a)(3)(A), from November 10, 2011 through July 29, 2014.

## C. Woods's Appeal and Analysis

Woods assigns five errors to ALJ Schiro's analysis. First and most critically, Woods says, Dr. Tolchin's psychiatric report casts doubt on Woods's ability to perform simple repetitive tasks, which the RFC assumes she can perform. (PL Br 10–12) Woods urges, relatedly, that when the VE incorporated Dr. Tolchin's opinion into one version of the ALJ's hypothetical—as, Woods argues, he was bound to do—the VE testified that Woods could not work. (*Id.*) Woods's brief focuses almost exclusively on this first argument, as does the Commissioner's. Second, Woods claims the ALJ failed to "combine all impairments or discuss medical equivalence" at Step 3 (*Id.*) Third, Woods complains that ALJ Schiro did not explain, again at Step 3, why the evidence does not support medical listings 1.02 and 1.04 (*Id.*) Fourth, Woods says ALJ Schiro did not assess fatigue and other complications of her "uncontrolled diabetes." (*Id.*) Finally, Woods argues, ALJ Schiro described her decision as consistent with ALJ Lissek's prior decision, but ALJ Lissek's decision found Woods to suffer from severe fibromyalgia, fibroids, and chronic back pain syndrome—impairments that ALJ Schiro did not consider severe. (*Id.* 12) *See Woods v. Colvin*, 2013 WL 5730539, at *1.

### 1. Dr. Tolchin's Opinion

Woods's first argument focuses on the following statement, which appears in the report of psychiatric consultative examiner Dr. Tolchin:

> With regard to the daily functioning of the claimant, she is able to follow and understand simple directions and instructions. However, she may lack the necessary motivation to perform simple tasks. She appears to have difficulty maintaining attention and concentration. She will have difficulty learning new tasks and performing complex tasks independently. She will need support to maintain a regular schedule. Her difficulties appear attributable to depression and anxiety. The results of the present evaluation appear to be consistent with psychiatric problems, which may significantly interfere with claimant's ability to function on a daily basis.

(R 603)

With emphasis on the last sentence in the above statement, Woods argues that no record evidence contradicts Dr. Tolchin's opinion and thus ALJ Schiro's reasons for affording it little weight are baseless. (Pl Br 10) Indeed, there is no alternative mental status or psychiatric evaluation in the record. But that is because, aside from Woods's unsubstantiated report to Dr. Tolchin that she attended biweekly outpatient therapy in 2012, there is no record evidence that she has ever received mental health treatment. The lack of directly conflicting evidence is not an automatic basis for an ALJ to give full weight to otherwise shaky opinion evidence—particularly where, as here, the opinion is that of a non-treating physician, where objective clinical findings do not support the opinion, and where the opinion is not consistent with the record as a whole. *See* 20 C.F.R. 404.1527(c)(2)–(4), 416.927(c)(2)–(4).

Woods submitted no treatment records related to her mental health from the relevant November 2011 through July 2014 time period and, albeit with assistance, she is able to perform many normal daily living activities. This evidence (and lack thereof) counsels against placing too much weight on Dr. Tolchin's ambiguous caution that Woods's "psychiatric problems . . . may significantly interfere with [her] ability to function on a daily basis." (R 603)

Even if I take Dr. Tolchin's caution at face value as Woods urges me to do, I find that ALJ Schiro adequately accounted for Woods's potential psychiatric problems in the RFC. The RFC limits Woods to "low stress work," which entails "simple, routine tasks," "only occasional changes in work routines," only "simple decision-making," only non-collaborative "occasional contact with coworkers and supervisors," and "no public contact". (R 19–20)

But Woods argues that these limitations fall short, pointing out that when ALJ Schiro asked the VE whether a hypothetical individual with Woods's characteristics and background could perform the representative occupations under either of two additional scenarios, the VE replied that either scenario would preclude the hypothetical individual from sustaining *any* work in the national economy. (Pl Br 11, 18–19; *see* R 55–56). Those scenarios are as follows: (1) the individual suffers pain and medication-related lapses in

16

concentration and as a result is off-task for 15 percent of the work day; and (2) the individual is absent two or more days per month because of pain, medication, and her overall condition. (R 55–56) Woods argues that these scenarios both reflect Dr. Tolchin's opinion and depict her actual condition and therefore, the ALJ should have relied on the VE's response—that an individual under these scenarios is incapable of working.

For the same reasons I find that ALJ Schiro was not required to afford controlling weight to Dr. Tolchin's opinions, I find that she was not required to further incorporate into the RFC Woods's vague psychiatric symptoms and limitations. Therefore, I also find that ALJ Schiro was not required to pose to the VE either of the two alternative scenarios stated *supra*. Accordingly, the opinion the VE gave in response to those scenarios is not controlling.

The case law requires a hypothetical question posed to a VE to reflect all of a claimant's specific limitations—mental and physical—where they are supported by established medical evidence. *See, e.g., Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002) ("Where there exists in the record medically undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence."); *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005) ("We do not require an ALJ to submit to the vocational expert every impairment *alleged* by a claimant. Instead . . . hypotheticals posed must accurately portray the claimant's impairments and that the expert must be given an opportunity to evaluate those impairments as contained in the record. . . . the ALJ must accurately convey to the vocational expert all of a claimant's *credibly established limitations*." (internal quotation marks and citations omitted)).

I would not consider Dr. Tolchin's opinion "medically undisputed evidence of specific impairments." *Burns*, 312 F.3d at 123. Rather, it constitutes internally ambivalent evidence of Woods's moderate, non-specific mental limitations. For example, although Dr. Tolchin's "medical source

statement" hints that Woods's mental status may "significantly interfere" with her "ability to function on a daily basis," Dr. Tolchin also reports that his mental status examination of Woods showed that her "demeanor and responsiveness to questions was cooperative," that her "speech was fluent and productive," that her "thought processes were logical, linear, and goal directed, with no evidence of hallucinations, delusions, or paranoia," and that she "demonstrated an adequate degree of abstract reasoning ability." (R 602) Dr. Tolchin did describe Woods as having a tearful affect and dysphoric mood, but he also described her as oriented and having only mildly impaired attention, concentration, and memory. (*Id.*)

"Limitations that are medically supported but are also contradicted by other evidence in the record may or may not be found credible—the ALJ can choose to credit portions of the existing evidence but 'cannot reject evidence for no reason or for the wrong reason'" *Rutherford*, 399 F.3d at 554 (quoting *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir.1993) and *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981)). Here, other evidence in the record casts doubt on Dr. Tolchin's "medical source statement"—namely, Woods's ability to drive, shop, perform light cooking and cleaning, care for her daughter, and handle money. While Woods requires her mother's assistance to perform some of these activities, the record indicates that it is Woods's physical—not mental—impairments that demand this assistance. (*See* R 40–44, 586–89, 602) Therefore, I would not say that ALJ Schiro's assessment of Dr. Tolchin's statement was unsupported or made for the wrong reason, and I find that Woods's RFC sufficiently accommodates her mental status.

### 2.    *Medical Equivalence Analysis*

Despite the minimal briefing afforded to Woods's four remaining arguments, I find one of them persuasive and two of them non-dispositive but nevertheless worthy of attention on remand.

I most agree with Woods's second argument that ALJ Schiro failed to "combine all impairments or discuss medical equivalence." (Br. 12) This argument refers to Step 3, at which point, if the ALJ does not find that any

single impairment meets those described in the Appendix 1 listings, the ALJ must consider whether the claimant's impairments in combination are medically equivalent to one of the Appendix 1 impairments. The regulations set forth three ways in which an ALJ might find medical equivalence:

> (1)(i) If you have an impairment that is described in appendix 1, but—
>
>> (A) You do not exhibit one or more of the findings specified in the particular listing, or
>>
>> (B) You exhibit all of the findings, but one or more of the findings is not as severe as specified in the particular listing,
>
>> (ii) We will find that your impairment is medically equivalent to that listing if you have other findings related to your impairment that are at least of equal medical significance to the required criteria.
>
> (2) If you have an impairment(s) that is not described in appendix 1, we will compare your findings with those for closely analogous listed impairments. If the findings related to your impairment(s) are at least of equal medical significance to those of a listed impairment, we will find that your impairment(s) is medically equivalent to the analogous listing.
>
> (3) If you have a combination of impairments, no one of which meets a listing (see § 404.1525(c)(3)), we will compare your findings with those for closely analogous listed impairments. If the findings related to your impairments are at least of equal medical significance to those of a listed impairment, we will find that your combination of impairments is medically equivalent to that listing.

20 C.F.R. § 404.1526.

With respect to medical equivalence, the U.S. Court of Appeals for the Third Circuit has explained:

> Although the claimant bears the burden of proving that his impairments equal or meet those listed in Appendix 1, if a claimant's impairment does not match one listed in Appendix 1, the ALJ is required to perform a comparison between the claimant's impairment(s) and those listed in Appendix 1. 20 C.F.R. § 404.1526(b). This court has stated that it is

> the ALJ's "responsibility ... to identify the relevant
> listed impairment(s)" and " 'develop the arguments
> both for and against granting *152 benefits.' " *Burnett
> v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 n. 2 (3d
> Cir.2000) (quoting *Sims v. Apfel*, 530 U.S. 103, 111,
> 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000)).

*Torres v. Comm'r of Soc. Sec.*, 279 F. App'x 149, 151–52 (3d Cir. 2008). In

*Torres*, where the ALJ's medical equivalence analysis "failed to combine [the

claimant's] many medical impairments and compare them to analogous

Appendix 1 listings, the court concluded that it had no way to meaningfully

review the ALJ's decision and thus remanded the case for fuller development of

the record and explanation at Step 3. *Id.* at 152.

Here, ALJ Schiro explained why Woods's physical impairments

individually and mental impairments "singly and in combination" do not meet

Appendix 1 listings. Woods does seem, however, to have a number of

impairments that would naturally have some cumulative effect. The ALJ never

considered whether all physical and mental impairments in combination are

equivalent to one of the Appendix 1 impairments. Her medical equivalence

analysis consists entirely of the conclusory statement: "The claimant does not

have an impairment or combination of impairments that meets or medically

equals the severity of one of the listed impairments in [Appendix 1]." (R 18) *Cf.*

*Wright v. Comm'r of Soc. Sec.*, No. CV 15-3965 (ES), 2016 WL 5852854, at *9

(D.N.J. Oct. 4, 2016) (distinguishing an ALJ's one-paragraph "combination

analysis" from the "one conclusory sentence" in *Torres*).

Neither Woods nor the Commissioner addresses in any detail the issue of

whether her combined impairments medically equal any particular Appendix 1

listing. Standing alone, the ALJ's decision does not really permit "meaningful

judicial review" of that issue. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d

112, 119 (3d Cir. 2000); *see also Garcia v. Comm'r of Soc. Sec.*, No. CV 14-7736

(ES), 2017 WL 1157863, at *5 (D.N.J. Mar. 28, 2017) (remanding where the

ALJ's combination analysis consisted of just a few conclusory statements,

despite that she *did* consider why the claimant's individual impairments did

not meet Appendix 1 listings); *Rossignol v. Comm'r of Soc. Sec.*, No. 2:15-CV-00105 (CCC), 2016 WL 7130915, at *6 (D.N.J. Dec. 7, 2016) (remanding because "although the ALJ addressed Plaintiff's five impairments individually, he did not adequately consider them in combination"). Remand is therefore appropriate.

On remand, the ALJ shall explain her findings at Step 3, including an analysis of whether and why Woods's diabetes, degenerative joint disease of the spine, and depression with anxiety, in combination, are or are not equivalent in severity to one of the impairments listed in Appendix 1.

### 3. Medical Listings 1.02 and 1.04

Also with respect to Step 3, Woods complains that ALJ Schiro failed to explain why the evidence does not support medical listings 1.02 and 1.04 (*Id.*) I agree that ALJ Schiro omitted an analysis as to these listings at Step 3, but I find that this error was technical and harmless.[13] The record quite clearly does not satisfy the requirements of listings 1.02 and 1.04; it contains no evidence of gross anatomical deformity or compromise of a nerve root or the spinal cord—factors necessary for impairment listings 1.02 and 1.04. *See* pp. 6–7 & nn.4–5, *supra*. Moreover, ALJ Schiro did consider and discuss later in her opinion what little evidence Woods submitted concerning the condition of her spine and joints. (*See* R 21–22; *see also* R 604–608, 612, 617–23)

Nevertheless, because I am already remanding for a more thorough "medical equivalence" review, on remand the ALJ should better explain at Step 3 why listings 1.02 and 1.04 are not met.

### 4. Evidence of Diabetes Complications

Next, Woods argues that ALJ Schiro did not assess Woods's fatigue and other complications of "uncontrolled diabetes." (Br. 12) I disagree. At Step 4, ALJ Schiro acknowledged that Woods sees Dr. Gandhi for diabetes

---

[13] The Third Circuit has applied a harmless error rule in ruling on Social Security appeals. *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005) ("We . . . conclude that a remand is not required here because it would not affect the outcome of the case.").

management, that her laboratory results show uncontrolled hemoglobin A1C testing and glucose levels, and that Woods has complained of fatigue and weakness. (R 21) Against these considerations, however, the ALJ properly balanced the *lack* of evidence of diabetic complications, the infrequency with which Woods sees Dr. Gandhi, Dr. Gandhi's equivocal statements concerning Woods's capacity to work, and Woods's ability to handle many daily living activities. (R 21–22) I am satisfied that ALJ Schiro adequately discharged her duty to consider Woods's diabetes and alleged complications, at least at Step 4.

What concerns me more about the ALJ's evaluation of Woods's diabetes evidence is that at Step 3, she considered Appendix 1 listing 9.08 rather than listing 9.00. Listing 9.00 replaced listing 9.08 well before ALJ Schiro issued her decision. *See* n.6, *supra*. Although I think the ALJ's oversight here was again harmless error, on remand, the ALJ should consider whether Woods's diabetes-related impairments meet or equal listing 9.00, Endocrine disorders, under current regulations.

> 5. *ALJ Lissek's 2011 Decision*

Finally, Woods seems to argue that because ALJ Lissek's 2011 decision found that Woods suffered from severe fibromyalgia, fibroids, and chronic back pain syndrome—conditions that ALJ Schiro did *not* consider severe in 2014— ALJ Schiro's comment that her findings are consistent with ALJ Lissek's prior decision somehow renders ALJ Schiro's decision improper. (Br. 12; *see* R 433– 40 (November 9, 2011 decision of ALJ Lissek)) For context, I note that ALJ Schiro's decision refers to ALJ Lissek's opinion twice: first, ALJ Schiro concurs with ALJ Lissek's decision to afford little weight to Dr. Gandhi's assessment dated August 29, 2011, and second, she comments, generally, that her conclusion as to Woods's non-disability and RFC is consistent with ALJ Lissek's findings because little had changed in Woods's medical record. (R 20– 22)

Nothing in ALJ Schiro's decision suggests she unduly relied on ALJ Lissek's decision or abdicated her own responsibility to assess the record. The fact that ALJ Schiro declined to make the same Step 2 findings as ALJ Lissek

makes little difference; both ALJs found Woods non-disabled. (If anything, it might have been improper if ALJ Schiro *had* adopted ALJ Lissek's opinion that Woods suffers from severe fibromyalgia, fibroids, and chronic back pain syndrome, because the substantial evidence supporting those conditions pre-dates the onset of disability that Woods currently alleges. Pre-onset (i.e., pre-November 2011) evidence would necessarily be given lesser weight in determining Woods's limitations. *See Torres v. Comm'r of Soc. Sec.*, No. CV 14-6178 (JBS), 2015 WL 8328346, at *11 (D.N.J. Dec. 8, 2015); *Winward v. Comm'r Soc. Sec.*, 629 F. App'x 393, 394 (3d Cir. 2015) (defining the relevant time period as beginning with the alleged onset of disability). Woods acknowledges as much in her brief. (*See* Br. 19 n.2 (acknowledging it was "not technically an error" for ALJ Schiro not to mention records from a December 2009 psychiatric examination because it "portrays [Woods's] mental status 2 years before the onset date claimed in the current application."))). The record evidence from November 2011 forward does not support a finding that Woods suffers from severe fibromyalgia, fibroids, or chronic back pain syndrome. ALJ Schiro's general comment that her opinion is consistent with that of ALJ Lissek cannot be used as a means to trap her into a ruling that is at odds with the record. Accordingly, Woods's final argument is without merit.

### III. CONCLUSION

For the foregoing reasons, ALJ Schiro's decision is REMANDED for further proceedings. No view is expressed as to the ALJ's ultimate decision, but on remand

(a) the ALJ shall explain her findings at Step 3, including an analysis of whether and why Woods's diabetes, degenerative joint disease of the spine, and depression with anxiety, in combination, are or are not equivalent in severity to one of the impairments listed in Appendix 1;

(b) the ALJ shall specifically explain at Step 3 why listings 1.02 and 1.04 are not met; and

(c) the ALJ shall consider whether Woods's diabetes-related impairments meet or equal listing 9.00, Endocrine disorders, under current regulations.

An appropriate order accompanies this Opinion.

Dated: June 29, 2017

KEVIN MCNULTY
United States District Judge